[No. 2166.]

THUNBORG v. THE CITY OF PUEBLO.

**1. Cities and Towns—Negligence—Public Streets.**

Where a fireplug, very near the beaten roadway of a street and at a point in the roadway where vehicles could not pass without one turning out of the beaten way was permitted to become concealed by growing weeds and vegetation, and the city had knowledge of the condition which rendered the fireplug

dangerous to travelers on the street, the city was guilty of negligence in permitting vegetation to conceal the plug and is liable for injuries to a person caused by his vehicle coming in collision with said fireplug without any negligence on his own part while driving along the street.

2.   Same—Contributory Negligence—Instructions.

In an action against a city for injuries to plaintiff caused by his vehicle while driving along a public street coming in contact with a concealed and dangerous fireplug, where defendant claimed that the injury was the result of plaintiff's own negligence in driving along the street at a furious and unlawful rate of speed, an instruction that if the jury found from the evidence that plaintiff was traveling at a furious and rapid rate of speed and that such act was the cause of the injury it was immaterial whether such traveling was intentional or the result of his inability to restrain his horse he was guilty of contributory negligence and could not recover, was erroneous.

*Error to the District Court of Pueblo County.*

Mr. M. J. Galligan, for plaintiff in error.

Mr. Geo. W. Collins, for defendant in error.

Thomson, J.

C. A. Thunborg brought this action against the city of Pueblo to recover damages for injuries sustained by him on June 24, 1898, by coming into collision with a hydrant, or fire plug, hidden by weeds and sagebrush, while driving along Court Street, a public street of the city, in the evening. The complaint charged negligence against the city in suffering a growth of weeds and brush to conceal the fireplug, and alleged want of knowledge in the plaintiff of its existence. The answer denied negligence on the part of the city and alleged that the street was but little used and that the plaintiff was guilty of contributory negligence in driving at a furious and unlawful rate of speed. The defendant had judgment and the plaintiff appealed.

The following facts appeared from the evidence:

The street was a public and much-used thoroughfare,
The fire plug was but a few inches from the beaten
roadway, which deviated towards it to avoid a pud-
dle of mud, and was concealed by a thick growth of
weeds and sagebrush. The same conditions had ex-
isted there for at least three years previous to the
accident, the weeds being renewed every spring, and
the sagebrush remaining constantly. The injuries
received by the plaintiff were severe and permanent.
It was dark or nearly dark when the accident oc-
curred. The plaintiff testified that on the evening
of the accident he was returning to his home in a
cart; that when nearly opposite the fireplug, which
he had never seen and the existence of which he did
not suspect, he saw another vehicle approaching him
in the roadway which he could not pass except by
entering the weeds and brush; that to avoid a col-
lision he turned to the right into the weeds and brush,
struck the fire plug and was thrown to the ground,
and that when approaching the place where the fire
plug was located his horse was going at an ordinary
trot. It was testified that in the previous summer
another person meeting a team in the same locality
turned into the weeds and brush to avoid it, struck
the fire plug and broke his buggy, and that at still
another time at the same place there was a narrow
escape from the same kind of accident.

Mr. E. Settles, the man in the buggy which the
plaintiff turned out of the road to avoid, stated that
he heard the rattle of the plaintiff's cart; that it
seemed to him from the great noise the cart was
making that some one was driving very fast, or that
the horse was running away; that it was nearly dark
and he could not see whether the horse was trotting
or loping; that when almost opposite to him the plain-
tiff left the road and struck the fire plug, and that
he went to the plaintiff and asked him why he was

driving so fast and the plaintiff answered that he was driving a new horse and could not hold him. Witness also stated that the plaintiff was very much stunned by the fall. Two members of the police force of the city, who took the plaintiff to the hospital, said he told them that his horse was running away at the time of the accident. They also said he was suffering frightful pain. In rebuttal it was shown that owing to the play of the spokes in the hubs the plaintiff's cart which was very old, was extremely noisy.

The fire plug was lawful and necessary in the place it occupied, yet by reason of its being concealed from view it became a menace to the safety of travelers. It appears that it was very close to the edge of the beaten roadway and that a vehicle passing at that point could be avoided only by turning towards it, and this, one having no reason to suspect that he would encounter anything more dangerous than weeds or sagebrush, would not hesitate to do. The plaintiff being lawfully on the street, for the purpose as he supposed of preventing a collision, turned his horse into the harmless-appearing growth of vegetation with the result that he suffered permanent injury. That the city had actual or implied knowledge of the existence of the conditions which rendered its fire plug dangerous to travelers is not disputed, and we think its negligence was established beyond question. If, however, as to the question of the city's negligence, it could be said that the evidence left room for a difference of opinion, the court's third instruction, which was given by consent, contained a fair statement of the law, and in so far as other instructions were inconsistent with it, they were erroneous.

But while, respecting the duty and responsibility of the city in relation to the cause of the ac-

cident, the court correctly declared the law, on the question of contributory negligence it committed fatal error. In submitting that question to the jury the following language was used:

"The jury are further instructed that if they find from the evidence that the plaintiff was traveling at a furious and rapid rate of speed and that such act on his part was the cause of the injury and that he would not have suffered the same had he been driving at an ordinary and prudent rate of speed, then it is immaterial so far as this defense is concerned whether his so traveling was intentional on his part or the result of his inability to restrain his horse."

Negligence is want of care. It consists in omitting to do something which should be done, or inconsiderately doing something in an improper manner. The term supposes the ability to do the thing omitted or to do the thing undertaken properly. It cannot be applied to an act or omission which is compulsory.

There was no proof of rapid or furious driving by the plaintiff. The only evidence warranting a supposition that the horse was exceeding his ordinary speed is found in statements of the plaintiff made when stunned by the fall, and, according to the same evidence, the horse was at the time, beyond control. If the horse was going excessively fast, it is quite material whether the plaintiff was able to restrain him or not; for unless the plaintiff was himself responsible for the immoderate speed it constitutes no defense to the city.—*Denver v. Johnson,* 8 Colo. App. 384; *Crawfordsville v. Smith,* 79 Ind. 308; *Ring v. Cohoes,* 77 N. Y. 83; *Baldwin v. Turnpike Co.,* 40 Conn. 238.

Let the judgment be reversed.

*Reversed.*